**FILED**
Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Augusta, Georgia
By jpayton at 12:20 pm, Feb 07, 2013

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | |
|---|---|
| IN RE: ) | Chapter 11 Case |
| ) | Number <u>12-11409</u> |
| TRI-CHEK SEEDS, INC. ) | |
| ) | |
| Debtor ) | |
| _____) | |

## OPINION AND ORDER CONVERTING CASE TO CHAPTER 7

This matter is before me on motions to convert this case to a chapter 7, or in the alternative to dismiss the case filed by Carolina Eastern Warehouse, Inc. ("Carolina") and Crop Production Services, Inc. ("CPS") (collectively these motions are referred to as "the Motion"). At the hearing, the United States Trustee ("UST") and five other unsecured creditors, Kimberly Seeds International, Inc., Langston Companies, Missouri Southern Seed Corp., Cedar Rock Farms, Inc. and Christian County Grain, Inc. orally joined in the Motion. In addition, also before the Court is Debtor's Motion for a Final Order to Use Cash Collateral with an Affidavit of Default by lender, Suntrust Bank ("Suntrust") and an Order Prohibiting the Use of Cash Collateral Pending Further Court Order. For the reasons set forth on the record and those set forth herein, the case is ordered converted to a chapter 7.

## FINDINGS OF FACT

Debtor, Tri-Chek Seeds, Inc., filed its chapter 11 bankruptcy petition on August 7, 2012. Mr. Scott Gunter ("Gunter") is the sole shareholder. After notice and hearing a cash collateral order was entered allowing Debtor to use Suntrust's cash collateral pursuant to various terms and conditions. See Dckt. No. 58 and Dckt. No. 102. Ultimately, Suntrust filed an Affidavit of Default and the Court entered an order on January 11, 2013 prohibiting Debtor's use of cash collateral without further court order.

On December 27, 2012 Carolina filed its Motion to Convert or Dismiss because of Debtor's failure to file any operating reports. On January 7, 2013 CPS joined in this motion citing that Debtor had paid various pre-petition expenses of Gunter and without the operating reports creditors were unable to monitor Debtor's activities to ensure such conduct did not continue post-petition. On January 7, 2013 a notice of hearing was issued notifying parties in interest of the January 31, 2013 hearing date. Thereafter, Debtor filed the following operating reports:

  August 2012 Report filed January 11, 2013;
  September 2012 Report filed January 14, 2013;
  October 2012 Report filed January 24, 2013;
  November 2012 Report filed January 30, 2013; and
  December 2012 Report filed January 30, 2013.

At the hearing, the movants established that monthly cash

2

flow since the filing of the bankruptcy has not produced sufficient income to meet operating expenses and Debtor has relied upon cash infusions of approximately $121,000.00 from Gunter. Even with the cash infusions, Debtor has lost approximately $8,103.80 since the date of filing the petition. Gunter acknowledges these losses but said these are Debtor's slowest months and seed sales picked up in mid March through July. Debtor's other source of income is from the operation of various trucks.

Gunter testified he did not understand how to prepare the monthly operating reports and that Debtor's accountant did not have the expertise to prepare these reports. As such, in December, Debtor engaged a restructuring specialist, Michael D. Brooks, with Resolution Management, Inc., to assist him in preparing the reports. Mr. Brooks confirmed this arrangement, but both Mr. Brooks and Gunter acknowledged that court approval was not obtained before Mr. Brooks was engaged. Debtor did not file an application to employ Mr. Brooks until January 25, 2013.

Mr. Brooks testified that he prepared the operating reports. He acknowledged various post-petition shareholder loans from Gunter to Debtor. He testified that he offset any expenditures reflected on the monthly operating report for Gunter's personal expenses against Gunter's outstanding loan to Debtor. Despite the

3

fact that the cash collateral order provided for Debtor to pay Gunter $12,500.00 per month as officer compensation, Mr. Gunter testified he as not been paid any salary. As of the hearing date, post-petition Debtor would be entitled to $75,000.00 in monthly compensation. Debtor has paid Gunter approximately $65,000.00 in shareholder loans post-petition.

The operating reports also reflect various wire transfers noted as "WTRF/PrivateFamily." Gunter explained these were payments to Alex Schwarez, an investment banker with Private Family Practice, who apparently has been assisting Debtor in trying to find lenders to provide sufficient financing for Debtor to procure adequate inventory. Again, neither Mr. Schwarez nor Private Family have been approved to be employed by Debtor. Furthermore, Debtor has not filed a motion to employ Mr. Schwarez or Private Family.

At the hearing, Debtor acknowledged it has failed to pay at least $34,000.00 - $40,000.00 in Withholding, Medicare and Social Security taxes.[1] Furthermore, based upon the calculations set forth

---

[1] The operating reports reflect a delinquency of at least $186,000.00 (Ex. 6, p. 27) but after close of evidence, after reviewing exhibit 1 and attachment 6, page 31, which reflected pre-petition and post-petition delinquency in the approximate amount of $152,000.00, Debtor's counsel stated that Mr. Brooks, if recalled, would testify that the operating reports overstated the delinquency and that post-petition delinquency is really around $34,000.00-$40,000.00. While movants consented to this statement they noted that the schedules and operating reports speak for themselves and

4

in the operating reports the UST reported quarterly trustee fees of $9,425.00 were due. The UST also stated when a debtor fails to file operating reports the UST's office bills $350.00 per quarter in arrears. Debtor in this case was billed, and paid, $350.00 in October 2012 for the third quarter fees. Debtor was billed $350.00 in January for the fourth quarter fees. The UST said the fees for the fourth quarter of 2012 were due on the hearing day and had not yet been tendered.

Finally, while the January operating report is not yet due Gunter testified to pre-paying $5,000.00 on a fuel card on January 30, 2013. This payment was made despite the order entered January 11, 2013 prohibiting Debtor from using cash collateral without further court order. Counsel for Debtor and Suntrust also disagreed whether Debtor's monthly line item expenditures of cash collateral were in accordance with the variances allowed by the budget attached to the order. Nevertheless, counsel for Suntrust pointed out regardless of the line item variances it is clear the cash collateral order did not allow for Debtor to make loans to its employees, but the December operating report shows $5,350.00 in post-petition loans to employees. Ex. 6, p. 3.

---

included these and other discrepancies and errors.

5

## CONCLUSIONS OF LAW

Subject to various exceptions not applicable in this case, the court on request of a party in interest and after notice and hearing shall for cause convert or dismiss a case, whichever is in the best interest of creditors and the estate, unless the court determines that the appointment of a trustee is in the best interest of creditors and the estate. 11 U.S.C. §1112(b)(1). The movant bears the burden of proof to show cause for such action exists by a preponderance of the evidence. <u>Canpartners Realty Holding Co. IV, LLC v. Vallambrosa Holdings, LLC</u>, 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009). Once cause is shown to exist the court must dismiss or convert unless the "unusual circumstances" provision of §1112 exist:

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that. . . .

11 U.S.C. §1112(b)(2).

The Bankruptcy Code provides a non-exclusive list of sixteen examples of cause under §1112(b)(4) seven of which exist in this case.

First, there is a substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood

6

of rehabilitation. 11 U.S.C. §1112(b)(4)(A). "Courts have held that a post-petition negative cash flow and an inability to satisfy current expenses constitutes a loss to or diminution of the estate." In re Motel Props., Inc., 314 B.R. 889, 894 (Bankr. S.D. Ga. 2004). In this case, the testimony and operating reports show negative cash flow but for the cash infusions from Gunter. See In re Youngwoo Moon, 2012 WL 6727186 *2 (Bankr. S.D. Ga. Dec. 13, 2012)(ongoing negative cash flow and inability to satisfy current expenses but for loans from family members constitutes a loss or diminution of the estate). Debtor's latest operating report shows negative $8,103.80 income and Debtor is unable to pay its expenses. At this point there is no reasonable likelihood of rehabilitation. Gunter has acknowledged he is close to running out of funds. While lenders do make loans secured by accounts receivable, factoring, equipment and machinery, given the current financial status of the Debtor there is no evidence that there is a reasonable likelihood that any such lender is available.

Second, Debtor's conduct when considering the other factors constitute gross mismanagement of the estate. 11 U.S.C. §1112(b)(4)(B). For six months Debtor has failed to timely file operating reports. This alone is sufficient cause to convert the case. Furthermore, Debtor has retained and paid professionals

7

without court approval. Without court approval, Debtor also has repaid $65,000.00 in shareholder loans to Gunter who has infused approximately $120,000.00 post petition into Debtor. During this time, Gunter was entitled to compensation in the amount of $75,000.00. At a previous cash collateral hearing Debtor's counsel acknowledged Gunter understood he was going to have to be put on a salary with the payroll. See Dckt. No. 92, p. 10, lines 7-14.

> Your Honor, we included that as [a compensation amount] - I think like a lot of small businesses prior to filing instead of being put on a formal salary like most small business people they pay themselves through reimbursement of loans that were owed and so I think that is the explanation for the issue [] raised [by the objecting parties]. He understands that he is going to be put on a salary with payroll but it is always subject to the availability of funds.

Dckt. No. 92, p. 10, lines 7-14.[2] While Gunter may have been entitled to these funds as salary the Debtor has not treated these payments as payroll and proper withholdings have not been made. Debtor also has made loans to employees without court approval and contrary to the terms of its cash collateral order. In addition, Debtor has entered into a lease agreement post-petition without presenting the lease agreement to the Court for approval.[3]

---

[2] Court may take judicial notice of its own record. See Fed. R. Evid. 201.

[3] Providing for rental payments in the budget is not approval to enter into a lease.

8

Third, Debtor has engaged in the unauthorized use of cash collateral substantially harmful to one or more creditors. 11 U.S.C. §1112(b)(4)(D). The order entered January 11, 2013 forbade Debtor from using cash collateral pending further court order.[3] Debtor nevertheless continued expending cash collateral. For example, Gunter testified he has continued to put money on fuel cards for employees as late as January 30, 2013.

Fourth, Debtor also failed to comply with a Court order. 11 U.S.C. §1112(b)(4)(E). In addition to failing to comply with the order prohibiting the use of cash collateral, Debtor has failed to comply with the motion for relief order whereby Debtor agreed to vacate the premises on or before January 31, 2013. Consent Order Granting in Rem Relief from Stay, Dckt. No. 100.

Fifth, cause exists for Debtor's unexcused failure to satisfy timely any filing or reporting requirement established by the Code or any rule. 11 U.S.C. §1112(b)(11)(F). Debtor failed to timely file its operating reports. It was only in the face of two motions to dismiss did Debtor file the reports. See In re Tucker,

---

[3] The order was entered after an affidavit of default was filed by Suntrust. The second interim cash collateral consent order had been noticed for objections and hearing scheduled for January 31, 2013. Dckt. No. 102. While the second interim order has not been entered, Debtor was fully aware of the January 11, 2013 order forbidding further use of cash collateral.

9

411 B.R. 530, 535 (Bankr. S.D. Ga. 2009)("'Operating reports and the financial disclosures accompanying them are the life-blood of the Chapter 11 process.' . . . Debtor's inability to timely file these reports, or to insure their accuracy after hiring an assistant, evidences 'habitual noncompliance [which] calls in to question a debtor's ability to effectively reorganize.'"). Furthermore, the reports show significant continuing losses of the business. Gunter testified that he and his accountant had difficulty filing the monthly operating reports and that he made several failed attempts to complete the reports. However, Debtor never informed this Court or his creditors of those difficulties or requested an extension. Rather, Debtor engaged professionals without prior court approval to assist in these tasks. Furthermore, there are still several inaccuracies in the monthly operating reports. Many obligations accompany the filing of a chapter 11 and the receipt of the automatic stay, and one of the most important of these obligations is timely filing operating reports and complying with the provisions of chapter 11. Given the facts and circumstances of this case, I do not find Debtor's failure is excused.

Sixth, and importantly, Debtor has failed to timely pay taxes owed after the date of the order of relief. 11 U.S.C. §1112(b)(4)(I). The timely payment of post-petition taxes is

10

crucial and Debtor acknowledged these taxes have not been paid. Debtor is delinquent in the amount of $34,000.00-$40,000.00 in post-petition tax obligations. See footnote 1, supra p. 4; see In re Westhampton Coachworks, Ltd., 2010 WL 5348422 *5 (Bankr. E.D.N.Y. Dec. 21, 2010)(failure to pay post-petition payroll taxes is cause to dismiss or convert).

Finally, cause exists for the failure of Debtor to pay any fees or charges required under 28 U.S.C. §123 and 11 U.S.C. §1112(b)(4)(K). Without the operating reports, the UST was unable to calculate the amount due and payable. Since Debtor has filed its operating reports, the UST reported that $9,425.00 is due and payable. In circumstances where operating reports are not filed, the UST bills $350.00 per quarter and Debtor has failed to tender the $350.00 for the fourth quarter of 2012 which was due and payable on the hearing day. Furthermore, Debtor is still in default for the amount actually owed. Given that Debtor's own delay was the reason for the UST's inability to calculate and assess the actual amount owed and the overall facts and circumstances of this case, I find this is cause under §1112(b)(4)(K).[4]

For these reasons, cause has been shown. The next issue

---

[4] This conclusion remains unchanged even if Debtor delivered the $350.00 fee due for the fourth quarter 2012 on its due date.

11

is whether unusual circumstances exist to prevent the mandatory conversion or dismissal as contemplated by §1112. Under §1112(b)(2)(B) one of the elements to establish unusual circumstances is that "the grounds for converting or dismissing the case include an act or omission other than under (4)(A)." 11 U.S.C. §1112(b)(2)(B). Here, one of the grounds is §1112(b)(4)(A).

Furthermore, even if §1112(b)(4)(a) did not apply, there are no unusual circumstances. See In re Whetten, 473 B.R. 380, 384 (Bankr. D. Colo. 2012)("unusual circumstances," contemplates "conditions that are not common in chapter 11 cases"). And, even if there are unusual circumstances the Debtor has not established a reasonable likelihood that a plan will be confirmed within a reasonable period of time and that the grounds for the dismissal or conversion include an act or omission of the Debtor for which there exists a reasonable justification and that will be done within a reasonable period of time. 11 U.S.C. §1112(b)(2).

Accordingly and because there appears to be equity in some of the assets and because of various pre- and post- petition transfers, conversion is in the best interest of creditors and the estate. Therefore, the case is hereby ORDERED converted to a chapter 7.

*/s/ Susan D. Barrett*
SUSAN D. BARRETT
CHIEF UNITED STATES BANKRUPTCY JUDGE

Dated at Augusta, Georgia
this 7th day of February 2013.